

570 Lexington Avenue, Suite 3500
New York, NY 10022

Michael F. Westfal
Counsel
212-466-6404
Michael.westfal@mukaseylaw.com

June 15, 2025

**VIA ECF**
The Honorable Vernon S. Broderick
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   United States v. Sam Glover, 24 Cr. 370 (VSB)

Dear Judge Broderick,

  We write on behalf of defendant Sam Glover to address three evidentiary issues raised in the government's letter of June 13, 2025.  ECF No. 55.

  *First*, with respect to the Arkansas Board of Pharmacy ("ABOP") hearing, the defense objects and moves to preclude the government from introducing GX 185, which is not admissible under Rule 801(d)(2)(D).

  *Second*, the defense objects and moves to preclude the video recordings and transcripts of the ABOP hearing itself (GX 1401 through GX 1408 and GX 1401-T through GX 1408-T), which should be excluded for the reasons stated by the Court during its discussion of the 2015 FDA inspection at the final pretrial conference.

  *Third*, the defense agrees with the government that scoping-related evidence that Sam read, received, or sent, or that otherwise bears on his knowledge and intent, is relevant and admissible.  The defense respectfully submits that this category of permissible counterproof should also include scoping photographs of Dr. Baker that Sam either appears in or that were retrieved from his phone, as well as other scoping and VCPR evidence that tends to disprove either the existence of the alleged conspiracy or any of the alleged co-conspirators' membership and participation in it.

### I. The Court Should Exclude GX 185 as Inadmissible Hearsay

  According to its June 13 letter, the government intends to introduce an extra-judicial statement made by Rebecca Mitchell, a regulatory consultant for U.S. Compounding's parent

The Hon. Vernon S. Broderick, U.S.D.J.
June 15, 2025
Page 2

company, Adamis Pharmaceuticals Corporation. GX 185 is a time entry submitted by Mitchell purporting to reflect a 15-minute "Regulatory discussion with Sam RE requesting informal conference with Arkansas BOP to discuss Azova." The government intends to offer this out-of-court statement for its truth, that is, to prove that Mitchell and Sam in fact held a 15-minute regulatory discussion about "requesting informal conference with Arkansas BOP to discuss Azova." ECF No. 55 at 2 n.2. Mitchell is not on the government's witness list and not expected to testify. The government claims that Mitchell's statement is not hearsay and is admissible pursuant to Rule 801(d)(2)(D) of the Federal Rules of Evidence. *Id*.

  A.  **Applicable Law**

Rule 801(d)(2)(D) provides that a statement is not hearsay if "[t]he statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of the relationship while it existed." "In order to introduce evidence . . . under [this Rule], a party must lay a sufficient foundation by establishing (1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the relationship." *Marcic v. Reinauer Transp. Co*., 397 F.3d 120, 128-29 (2d Cir. 2005) (internal quotation marks omitted).

With respect to the first factor, the existence of an agency relationship "is ordinarily a question of fact." *Garanti Finansal Kirilama A.S. v. Aqua Marine and Trading Inc*., 697 F.3d 59, 71 (2d Cir. 2012) (internal quotation marks omitted); *see also In re Tribune Co. Fraudulent Conveyance Litigation*, 946 F.3d 66, 79 (2d Cir. 2019) (holding that existence of agency relationship "is a mixed question of law and fact[]"). Where, as here, a question of fact arises in connection with the admissibility of evidence, the court sits as fact-finder under Rule 104(a). The proponent of the evidence – here, the government – has the burden of persuasion, and must prove the foundational facts by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). In evaluating the existence of an agency relationship, a court may consider the out-of-court statement but that statement "does not by itself establish" such a relationship. Fed. R. Evid. 801(d)(2).

"'[A]gency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act.'" *Tribune Co*., 946 F.3d at 79, quoting Restatement (Third) Agency (the "Restatement") § 1.01 (2006). Accordingly, the government must prove two essential elements. First, the government must prove, as "[a]n essential element of agency . . . the principal's right to control the agent's actions." *Hollingsworth v. Perry*, 570 U.S. 693, 713 (2013), quoting Restatement § 1.01, comment f. The government need not prove that "the defendant control[led] the daily tasks of the declarant[,]" *United States v. Rioux*, 97 F.3d 648, 660 (2d Cir. 1996), but the government must prove that "the principal . . . maintain[ed] control over key aspects of the undertaking." *Tribune Co*., 946 F.3d at 79 (internal quotation marks omitted). Second, the government must establish the existence of a fiduciary relationship between the would-be agent and would-be principal. "'If the relationship between two persons is one of agency . . . , the agent owes a fiduciary obligation to the principal.'" *Hollingsworth*, 570 U.S. at 714, quoting Restatement § 1.01, comment e.

The Hon. Vernon S. Broderick, U.S.D.J.
June 15, 2025
Page 3

### B. Rebecca Mitchell Was Not Sam's Agent

As an initial matter, the agency relationship must exist between the declarant, as agent, and the party against whom the statement is offered, as principal. Rule 801(d)(2)(D) applies to statements by an agent or employee of ***the party***, not an agent or employee of the party's employer, at this time, Adamis Pharmaceuticals Corporation. Since Mitchell was an agent of Adamis and not of Sam Glover, *see* GX 185 at 55, the exhibit should be excluded on that basis alone. In certain circumstances, courts have deemed corporate agents to be agents of the individual in control of the corporate principal, but this is not such a case. Sam was a middle manager, the vice president of sales at U.S. Compounding, which was a wholly owned subsidiary of Adamis. In July 2020, Sam certainly did not control Adamis, the public company that engaged Rebecca Mitchell as a regulatory consultant. Contrast that to *United States v. Kelley*, 305 F. App'x 705, 708 (2d Cir. 2009), cited by the government, in which the defendant was the majority owner and managing member of the LLC that controlled the limited partnership whose tax returns were admitted against him. *See United States v. Kelley*, 05 Cr. 254 (KMW), ECF No. 36 (Superseding Indictment), at ¶¶ 16-18 (S.D.N.Y. Feb. 14, 2006).

Likewise, in *Zaken v. Boerer,* 964 F.2d 1319, 1323 (2d Cir. 1992), the Second Circuit held that a company's vice president of sales was an agent of the individual defendant because the vice president was "answerable to [the defendant] who, as the company's principal owner, directed its operations and ultimately made all the financial decisions. In essence, [the declarant] was directly responsible to [the defendant]." The defendant in *Boerer* was the chief executive officer of the company and owner of 98 percent of its stock. *Id.* at 1321. That is not the case here. Having failed to show that Rebecca Mitchell was Sam's agent rather than Adamis's, the government should be precluded from introducing GX 185.

The government also has not attempted to establish the requisite foundation for the admission of GX 185. First, the government has not attempted to establish that Sam had the right to control Mitchell's actions. The exhibit itself shows that Mitchell reported to CFO Rob Hopkins, not Sam. GX 185 at 55. The government's intention to transform the relationship between two mid-level employees in different corporate departments into one of principal and agent would push Rule 801(d)(2)(D) well beyond its purpose, which is to admit evidence that the hearsay rules regard as classically reliable. Such an expansion would strip the rule of its protections, time-tested to assure reliability, and would "create a loophole in the hearsay rule through which evidence not contemplated by the authors of Rule 801 could be admitted." *Tribune Co.*, 946 F.3d at 79.

The government also cannot establish a fiduciary relationship between Mitchell and Sam. Employees of a common employer are coagents of a common principal, even if they "occupy different strata within an organizational hierarchy." Restatement § 1.01, comment g. Coagents owe fiduciary duties to their common principal. Coagents, however, are not agents of each other and owe each other no fiduciary duties. *Id.* An agent owes the principal a duty of loyalty. Restatement § 8.01. Indeed, that duty of loyalty provides the very foundation for admissibility under Rule 801(d)(2)(D): The Rule treats an agent's statements as reliable because the agent is said to be "unlikely to make statements damaging to his principal or employer unless those statements are true." *Nekolny v. Painter*, 653 F.2d 1164, 1171-72 (7th Cir. 1981); *see* 5

The Hon. Vernon S. Broderick, U.S.D.J.
June 15, 2025
Page 4

Weinstein's Federal Evidence § 801.33[1] (2022).  Here, Mitchell owed no duty of loyalty to Sam Glover.  At the very least, the government has introduced no foundational evidence of a fiduciary relationship in which Mitchell owed such a duty to Sam.

Having failed to establish the existence of an agency relationship in which Sam had the right to control Mitchell's actions and in which Mitchell owed Sam a fiduciary duty, the government has not met its burden of proving the foundational facts required by Rule 801(d)(2)(D).  The Court should preclude the government from introducing GX 185.

**II.     The Court Should Exclude Video Clips and Transcripts of the ABOP Hearing**

In its June 13 letter, the government proffered the evidence that it intends to introduce regarding the ABOP hearing.  ECF No. 55 at 2.  The government's proffer shows that Sam had nothing to do with U.S. Compounding's preparation for the hearing, or the presentation by Reed Smith attorney Rachael Pontikes at the hearing.  Instead, the evidence shows that on July 26, 2020, Sam sent a blank email with no content to Rebecca Mitchell, Dawn Bramlett, who was U.S. Compounding's VP of Finance at the time, and three attorneys from Reed Smith.  GX 216B.  The email contains no subject line and no content.  The following day, Sam was listed as an attendee on a calendar entry for a "Phone Conference – USC – Azova System" that included a Reed Smith attorney and Bramlett.  GX 216C.  GX 216C is proof that a calendar entry was created.  No one on that calendar request is on the government's witness list.

That was the extent of Sam's involvement according to the government's proffer.  What the proffer left out is DX 843, an August 5, 2020 calendar entry for a two-hour "Phone Conference – USC – 8/6 Arkansas Board Meeting" listing Adamis CFO Rob Hopkins, pharmacist Rhonda Johnson, and two Reed Smith attorneys as attendees, including Rachael Pontikes.  Sam was not invited and did not attend this phone conference.  The government's proffer also left out GX 607, an exhibit the defense expects to object to on several bases, but which suggests that during the August 5 prep call, Johnson reported to the Reed Smith attorneys in advance of the ABOP hearing that U.S. Compounding sales reps were "plac[ing] orders for themselves under Dr Baker's name" and that those reps would "get [a] commission from USC for medications ordered."  *See* GX 607, line 64.

After showing the jury eight video excerpts of the August 6, 2020 presentation by Pontikes to the Arkansas Board of Pharmacy, *see* GX 1401 through GX 1408, the government plans to introduce a text message exchange between Hopkins and Sam in which Hopkins wrote that "Rhonda lost today."  GX 202B.  The government also plans to elicit testimony from Hopkins about a conversation with Sam about the topics to be discussed at the ABOP hearing, testimony about a conversation between Hopkins and Pontikes in advance of the hearing, and testimony about the fact that Hopkins "observed Pontikes present at the Hearing."  ECF No. 55 at 2.  Finally, the government intends to elicit testimony from Rhonda Beck (née Johnson) that she was present at the hearing and that she conveyed to Sam afterward that the information presented to the Board was inaccurate.  ECF No. 55 at 3 (citing GX 3503-15).

The Hon. Vernon S. Broderick, U.S.D.J.
June 15, 2025
Page 5

As the Court made clear at the final pretrial conference in discussing whether the government should be able to introduce details of the 2015 FDA inspection, what is relevant in this case is the connection to Sam and his state of mind:

> So but to what extent can you tie in those steps, in other words, to Mr. Glover's awareness? In other words, there may be steps that the FDA inspector took, that there's no reason that anybody -- in other words that are things that, you know, material that they may gather or parts of the inspection that when they go back to the FDA, they basically take note of it. But on the other side, until they get the final results, you know, the people who are subject to it may not be necessarily aware of it.
>
> So I think there needs to be sort of a connection to Mr. Glover's awareness with regard to -- because calling the FDA inspector to say these are the steps I took. Okay. I mean, if one of them involved Mr. Glover -- I mean, they need to be I think more -- or at least I would like to hear how closely tied they are to Mr. Glover himself as opposed to the company.
>
> I mean, that the FDA came in and that they took certain steps, that doesn't mean that we have to get into details of what those actual investigative steps were, unless they were things that Mr. Glover became aware of and the government is able to establish that.

June 11, 2025 Transcript (Final Pretrial Conference) at 32:11-33:6.

The ABOP evidence is no different. To the extent Sam was involved at all, he interacted briefly with Rebecca Mitchell one month before the hearing, he received a calendar entry for a conference call ten days before the hearing, and then two government witnesses will testify about their conversations with Sam after the August 6 hearing. What is potentially probative is the information that was communicated to Sam before and after the hearing, not what was communicated to ABOP by a Reed Smith attorney at the hearing. Even the government has acknowledged that this is the probative link: "However, I think, again, with respect to the defendant's state of mind, what he understands about what happened at the hearing, is informed by his communications with the co-conspirators on the one hand who place themselves in one camp and the pharmacist in charge and the pharmacists on the other hand who are in another camp." June 11, 2025 Hearing Tr. at 74:13-18. The only witnesses who can testify as to what was communicated to Sam are Hopkins and Johnson, and both parties will have an opportunity to question them at trial.

On the other hand, the content of the actual presentation by Reed Smith attorney Rachael Pontikes before the Arkansas Board of Pharmacy has no bearing on Sam's knowledge, intent, or state of mind since Sam neither prepared Pontikes for the hearing nor attended it. The defense respectfully requests that the Court preclude the government from introducing GX 1401 through

The Hon. Vernon S. Broderick, U.S.D.J.
June 15, 2025
Page 6

GX 1408 and GX 1401-T through GX 1408-T. Such evidence is either hearsay,[1] irrelevant under FRE 401, or its minimal probative value is substantially outweighed by the danger of confusing the issues, misleading the jury, undue delay, and wasting time. Fed. R. Evid. 403.

In addition, for the reasons stated in the defense's accompanying *ex parte* submission to the Court, it would be unfairly prejudicial to allow the government to introduce the ABOP evidence as either direct proof of Sam's participation in a criminal conspiracy or proof of an attempt to conceal it, while preventing Sam from arguing to the jury that: (1) he took comfort in knowing that attorneys from Reed Smith LLP were representing U.S. Compounding before the Arkansas Board of Pharmacy, and (2) that such comfort supported his good faith belief in the propriety of his conduct. *See* Trial Tr. at 83:21-84:1, *United States v. Tagliaferri*, No. 13 Cr. 115 (RA) (S.D.N.Y. June 26, 2014), ECF No. 63 (permitting the defendant "to elicit testimony that attorneys were involved in the transactions … to argue that this involvement affected his state of mind, thus bearing on whether he acted with fraudulent intent.").

**III.    The Court Should Admit Dr. Baker Scoping Photos And Related Evidence**

The defense acknowledges the government's position stated in its June 13 letter that "evidence that Glover knew of Dr. Baker's scoping studies may bear on the issue of knowledge and intent" and that the defense should be able to introduce documents on which Sam was a sender or recipient and which are not otherwise irrelevant or unduly prejudicial, and elicit testimony regarding such episodes. ECF No. 55 at 5. The defense agrees that the government's proposal makes sense, but submits that the defense should also be permitted to introduce photographs of Dr. Baker scoping horses to the extent that Sam appears in the photographs or they were retrieved from Sam's phone. Such evidence is admissible for the same purpose acknowledged in the government's letter.

We also seek to introduce documents that on their face do not refer to Sam, but we anticipate being able to connect to Sam through witness testimony. We object to the notion that there must be an explicit connection to the defendant on the face of a document in order for that document to be admissible. The defense is aware of no authority for such a restrictive view of relevance, which is inconsistent with the broad scope of Rule 401 (evidence "having *any* tendency" to make a fact of consequence more or less probable than it would be without the evidence). No piece of evidence is required to conclusively prove a fact in issue to be relevant. *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010). Rather, relevance, as defined by Rule 401, "is a low threshold, easily satisfied." *United States v. Gramins*, 939 F.3d 429, 450 (2d Cir. 2019). "[S]o long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry." *United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006).

---

[1] As discussed in the defense's June 9, 2025 motion to preclude government evidence, *see* ECF No. 50 at 19-23, to the extent the government seeks to introduce Rachael Pontikes's statements at the ABOP hearing for their truth, those out-of-court statements are hearsay and do not constitute statements by a party's agent. Pontikes and the Reed Smith firm were agents of U.S. Compounding, not Sam Glover. *See also* Section I, *supra*.

The Hon. Vernon S. Broderick, U.S.D.J.
June 15, 2025
Page 7

The government's June 13 letter identifies DX 351, DX 844, and DX 844A as documents that "might generically relate to Baker or scoping[,]" as opposed to Sam's state of mind. ECF No. 55 at 1. This is overly restrictive. DX 351 is a text exchange between Kyle Zorn and Dr. Baker, Sam's alleged co-conspirators, discussing horses that Baker intended to re-scope. Baker proceeded to text Zorn photos of the results of the scoping examinations. Although Sam was not included in this text exchange, the defense expects to elicit testimony from Zorn that Sam was either present during some of the scoping examinations discussed in these messages, or he was made aware of them. Taken together, such evidence tends to undermine the government's allegation that Sam participated in a conspiracy in which he, Zorn, and Baker agreed to distribute prescriptions of omeprazole fenbendazole without a valid VCPR. *See United States v. Hayes*, 219 Fed. App'x. 114, 115 (3d Cir. 2007) (describing district court's admission of memorandum distributed by defendant recounting violation of company policy caused by recent incident of data falsification, which "tended to rebut the government's evidence of Hayes' involvement in a conspiracy to fabricate test results."). Such evidence also undercuts the government's allegation that Sam understood that Dr. Baker's consulting agreement was a sham contract designed to conceal such a conspiracy. And given Zorn's expected testimony connecting the evidence to Sam, it also corroborates Sam's good faith belief that Dr. Baker was seeing patients and prescribing omeprazole fenbendazole in instances when the patients needed it, as opposed to merely rubber-stamping orders by Zorn and his sales reps.

Similarly, DX 844 and DX 844A reflect text messages in which Zorn sent Baker a schedule for upcoming scoping examinations with the message: "Here's what we've got so far in Ocala." The defense expects to elicit through Zorn that the same schedule was sent to Sam and that the three alleged co-conspirators all traveled to Ocala, Florida to attend the scoping exams. These documents are undoubtedly relevant. The fact that the three alleged co-conspirators were traveling to Ocala farms to conduct scopes pursuant to a coordinated schedule tends to undercut the notion of a criminal conspiracy. The documents also connect to photographs taken by Sam that show Baker and Zorn conducting scopes in Ocala on this trip, as well as the orders of omeprazole fenbendazole prescribed by Dr. Baker pursuant to the scoping procedures reflected in the schedule. Sam was copied on those prescriptions. All of this evidence connects to Sam and undercuts the notion that the charged conspiracy existed. It is therefore relevant even if it does not vitiate the possibility of a conspiracy entirely. *See United States v. Htut*, 22 Cr. 671 (NSR), 2023 WL 3222484, at *2 (S.D.N.Y. May 3, 2023) (granting defendant's Rule 15 motion under heightened materiality standard and finding that "[a]lthough this testimony 'does not necessarily vitiate the possibility of a conspiracy' between Defendant and Individual-1, it is highly relevant to the question of whether [Defendant] knowing[ly] and willfully joined a conspiracy' with Individual-1.") (citations omitted).

To be clear, even if there was not a direct connection to Sam in DX 351, DX 844, or DX 844A, it is the defense's position that the documents would be admissible as they tend to disprove the existence of the alleged conspiracy. The government stated at the final pretrial conference that "[o]ne of the elements that the government has to prove is the existence of a conspiracy with this objective [to mislead]." June 11, 2025 Hearing Tr. at 107:17-22. The government also acknowledged several times that the actions, impressions, and state of mind of the alleged co-conspirators is also relevant to the existence of the alleged conspiracy (as opposed

The Hon. Vernon S. Broderick, U.S.D.J.
June 15, 2025
Page 8

to strictly Sam Glover's membership in it). *Id.* at 33:7-16 ("[B]ecause we have charged a conspiracy, the state of mind of the co-conspirators is also relevant . . . to the extent a co-conspirator or someone who was an agent of a co-conspirator was aware, we would argue that it's relevant to proving the intent of the conspiracy."); *id.* at 108:4-7.  If evidence is relevant and admissible to prove the existence of the alleged conspiracy or the state of mind of the alleged co-conspirators, then counterproof must also be relevant and admissible to rebut such conclusions. "Evidence relevant to undercut a charge is no less relevant to bolster it; the standard under Rule 401 is symmetric." *United States v. Rhodes*, 229 F.3d 659, 661 (7th Cir. 2000).

Accordingly, even in the absence of any connection to Sam, DX 351, DX 844, and DX 844A are relevant to disprove the existence of the alleged conspiracy to distribute without a valid VCPR, and to disprove the alleged co-conspirators' intentional and willful participation in such a conspiracy.  The evidence is admissible for such purposes, even if it does not entirely vitiate the possibility of such a conspiracy.  *Htut*, 2023 WL 3222484, at *2.  If evidence that tends to rebut a defendant's alleged involvement in a conspiracy is relevant, then evidence that tends to rebut a cooperating witness's involvement in the same conspiracy should also be relevant.  *Cf. Hayes*, 219 Fed. App'x. at 116.

Finally, the defense's proffered scoping and VCPR evidence is also relevant to rebut the government's allegation that U.S. Compounding's consulting agreement with Dr. Baker was a sham contract designed either to perpetuate or conceal the alleged conspiracy.  *See* ECF No. 29 at 4; ECF No. 33 at 6.  Both Hopkins and Zorn are expected to testify that the agreement was a sham.  The defense must be permitted to introduce evidence such as DX 351, DX 844, and DX 844A that undermines such testimony and shows that Dr. Baker in fact provided *bona fide* veterinary services under the consulting agreement.

The defense should be permitted to introduce the scoping and VCPR evidence described in the government's letter, as well as proffered evidence where the defense can connect that evidence to Sam's involvement or state of mind, or establish that the evidence tends to disprove the existence of the alleged conspiracy or any of the co-conspirators' willful participation in such a conspiracy.

Respectfully submitted,

/s/ Michael F. Westfal
Marc L. Mukasey
Torrey K. Young
Brianna Alford (not yet admitted in SDNY)
Michael F. Westfal

*Counsel for Sam Glover*

cc:   All counsel (via ECF)