```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
UNITED STATES OF AMERICA,                                  :
                                                           :
              -v-                                          :
                                                           :    24-CR-370 (VSB)
SAM GLOVER,                                                :
                                                           :        ORDER
                                      Defendant.           :
                                                           :
-----------------------------------------------------------X
```

VERNON S. BRODERICK, United States District Judge:

      Trial in this matter began on June 16, 2025 and is ongoing.  Before me is Defendant Sam Glover's motion to preclude the testimony of Dr. Robert P. Franklin as irrelevant and unduly prejudicial, (Doc. 67 ("Mot")), and the Government's opposition, (Doc. 68 ("Opp'n")).  For the reasons that follow, Glover's motion is DENIED.

      I assume the parties' familiarity with the factual and procedural background of the case.[1]  Dr. Franklin's expected testimony is that in 2019 "he performed a scoping study alongside the defendant and discussed with the defendant his compensation for the study.  Dr. Franklin is further expected to testify that he was compensated for the study not by a percentage of sales of Omeprazole-Fenbendazole with his name on it, but at a daily rate (plus travel costs and other expenses)."  (Opp'n 4.)  The scopes performed by Dr. Franklin are within the time frame of the charged conspiracy.

      I disagree with the Defendant that this testimony is "irrelevant."  (Mot. 1.)  As a general matter, the Defense has raised good faith as a defense, which implicates Glover's knowledge,

---

[1] My June 3, 2025 Opinion & Order on the parties' motions in limine, (Doc. 46), contains a detailed discussion of much of the relevant background.

intent, and belief during the time period of the alleged conspiracy.  Specifically, in a memorandum dated June 9, 2025, the Defense argued that evidence would show "Glover was present when Dr. Baker," an alleged co-conspirator of the Defendant, "performed gastronomic scoping procedures on horses that suffered from ulcers ('scopes')[,] . . . which gave Sam a good faith basis to believe that Dr. Baker had valid VCPRs supporting his prescriptions."  (Doc. 50 at 5.)  More recently, in a June 15, 2025 submission, the Defense argued that "[scoping-related] evidence also undercuts the government's allegation that Sam understood that Dr. Baker's consulting agreement was a sham contract designed to conceal [the charged] conspiracy."  (Doc. 58 at 7.)  Based upon the arguments presented, I ruled that scoping evidence during the charged conspiracy was admissible.  (*See* 6/17/25 Tr. 17:19-25.)  Accordingly, on cross-examination of Kyle Zorn, the Defense elicited testimony regarding, among other things:  (1) the import of scoping studies for prescribing omeprazole fenbendazole; (2) that Glover was present for scoping studies performed by Dr. Baker; and (3) that Glover approved orders of omeprazole fenbendazole sent for no charge to Dr. Baker in connection with certain scoping studies.  (*See* 6/18/25 Tr. 393–96, 402–22, 435–40; DX 46; DX 47; DX 300.)

      In light of Zorn's cross-examination and Glover's intention to rely generally on a defense of good faith, it is relevant that:  (1) Glover knew Dr. Franklin performed scopes; (2) Franklin discussed his compensation for the scoping studies with Glover; and (3) Glover was aware that, unlike Baker, Franklin was paid a per diem rate for his participation in scoping studies.  In particular, such evidence is relevant to Glover's knowledge of and good faith belief in the propriety of Dr. Baker's consulting agreement vis-à-vis the arrangement with Dr. Franklin.

      The Defense argues that permitting Franklin to testify on these topics would violate my June 3, 2025 Opinion & Order on the parties' motions in limine, (Doc. 46), in which I stated that

"evidence regarding other, non-fraudulent activity outside the scope of the charged conspiracy . . . is irrelevant to Defendant's guilt or innocence of the charged conspiracy." (Doc. 46 at 18 (internal quotation marks omitted)). The Defense also points out that I permitted it to introduce evidence regarding Glover's knowledge of scopes performed by Baker, not scopes performed by other veterinarians. (*See* 6/17/25 Tr. 17:19-25.) These arguments are not well taken. As an initial matter, I did not categorically preclude evidence of scopes performed by other veterinarians of which Glover was aware. Although the Government raised these non-Baker scopes in briefing and oral argument during final pretrial conference, (*see* Doc. 48 at 3; 6/11/25 Tr. 46:18-22), the Defense limited its proffer and argument only to Baker scopes, (*e.g.*, 6/11/25 Tr. 42:15-17), and my ruling was similarly limited.[2] In any event, as I noted in my June 3, 2025 Opinion & Order, "evidentiary rulings made in advance of trial are subject to change based on whether an appropriate foundation can in fact be laid for certain evidence, and the many variables that occur during the course of a trial that may impact a court's ruling at the time evidence is offered." (Doc. 46 at 5 (quoting *United States v. Mostafa*, 16 F. Supp. 3d 236, 248 n.1 (S.D.N.Y. 2014)) (alteration omitted).) Indeed, with regard to my ruling on certain documents, I specifically said, "I will reconsider this previous ruling based upon the testimony that Mr. Zorn gives and the foundation that is laid for that." (*See* 6/17/25 Tr. 18:21-24.)

The Defense also asserts that it would be prejudiced by permitting Franklin to testify, as the Government did not notify it that Franklin would testify until June 19, 2025. (*See* Doc. 25

---

[2] Briefing following the pretrial conference also focused on scopes performed by Dr. Baker. (*Compare* Doc. 55 at 5 ("[T]he Government accepts the possibility that evidence that Glover knew of Dr. Baker's scoping studies may bear on the issue of knowledge and intent."), *with* Doc. 58 at 6 ("The defense agrees that the government's proposal makes sense, but submits that the defense should also be permitted to introduce photographs of Dr. Baker scoping horses to the extent that Sam appears in the photographs or they were retrieved from Sam's phone . . . [and] documents that on their face do not refer to Sam, but we anticipate being able to connect to Sam through witness testimony.").)

3

(order endorsing May 23, 2025 deadline for "Government to produce . . . preliminary witness list").) The Defense argues that the timing of the disclosure "prevented [it] from identifying evidence to explain to the jury why Dr. Franklin's scoping study was different than Dr. Baker's—it served an entirely different purpose—and why he was compensated differently than Dr. Baker." (Mot. 5 (emphasis omitted).) As a general matter, "[t]he Government is not required to provide defense counsel with its witness list prior to trial." *United States v. Rivera*, No. 16-CR-175, 2017 WL 1843302, at *2 (S.D.N.Y. May 8, 2017) (citing Fed. R. Crim. P. 16); *accord United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990); *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably"). A district court may exercise its discretion to compel disclosure of Government witnesses if the defendant "makes a specific showing that disclosure is both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case," for instance where the case involves a "longer and more complex scheme[], or witnesses from foreign jurisdictions who might have needed to be deposed pursuant to letters rogatory." *Rivera*, 2017 WL 1843302, at *2 (citation modified and collecting cases).

Here, the Defense knew of a connection between Glover and Franklin before the Government provided notice of its intent to call Franklin. Indeed, the Defense contemplated offering at least one exhibit related to Franklin, DX 172, "a November 29, 2019 invoice from Dr. Robert P. Franklin." (Mot. 1.) The Government notified the Defense on June 19, 2025 that it intended to call Dr. Franklin based in part on my ruling of June 17, 2025, (*see* Opp'n 3), and the Government has timely produced 3500 material for this witness. In these circumstances, I do not find that the timing of the Government's disclosure that it would call Franklin as a witness

4

sufficiently prejudicial to warrant the preclusion of Franklin's testimony. *Cf. Weatherford*, 429 U.S. at 548–49, 559–60 (concluding that it did not violate a defendant's right to a fair trial when the prosecution disclosed a witness the day the witness testified); *United States v. Alessi*, 638 F.2d 466, 481 (2d Cir. 1980) (finding no unfair prejudice where the prosecution notified the defendant of a new witness the night before the witness's testimony and only provided impeachment material at the conclusion of the witness's direct examination).[3]

For the foregoing reasons, Defendant's motion to preclude the testimony Dr. Robert P. Franklin is DENIED.

SO ORDERED.

Dated:   June 22, 2025
         New York, New York

                                              Vernon S. Broderick
                                              United States District Judge

---

[3] I note that in response to the Defense's concern that Franklin will provide expert testimony, (*see* Mot. 6), the Government states that it "does not intend to elicit any expert testimony . . . and indeed will object to any attempt to elicit the same through cross-examination," (Opp'n 5).  I trust that neither party will attempt to elicit any expert testimony from Dr. Franklin.